
FILED
MAY 23 2017
Clerk, U.S Courts
District Of Montana
Missoula Division

| | |
|---|---|
| MICHAEL A. FROST,<br><br>Plaintiff,<br><br>vs.<br><br>BNSF RAILWAY COMPANY,<br><br>Defendant. | CV 15–124–M–DWM<br><br><br>ORDER |

Plaintiff Michael A. Frost seeks a new trial pursuant to Rule 59 of the Federal Rules of Civil Procedure. (Doc. 138.) Defendant BNSF opposes the motion. (Doc. 141.) Frost argues a new trial is warranted because the jury received an erroneous instruction that substantially prejudiced him, and because newly discovered evidence would likely have changed the outcome of trial. Because neither argument succeeds, the motion is denied.

## BACKGROUND[1]

On April 18, 2012, Frost worked with a steel gang near Brimstone, Montana. Frost alleges he was nearly struck by an oncoming train when track

---

[1] Unless otherwise noted, facts are taken from the jury instructions given at trial (Doc. 121, Instruction No. 10).

supervisors released it on a neighboring track without informing the steel gang. (Doc. 1 at 4-5.) Frost was subsequently served with a Notice of Investigation dated April 20, 2012, informing him that an investigation had been scheduled to "ascertain[] the facts and determine [his] responsibility, if any, in connection with [his] alleged fouling the track" on that day. Frost completed a BNSF employee personal injury/occupational illness report dated April 23, 2012, stating he had suffered "PTSD following [a] traumatic incident." BNSF held an investigatory hearing July 11, 2012, and subsequently found Frost in violation of two BNSF Maintenance of Way Rules. Frost was assessed a 30-day record suspension and 36-month review period. On October 9, 2012, Frost filed a complaint with the Occupational Safety and Health Administration. Frost was then served with another Notice of Investigation dated November 12, 2012, regarding an incident where he allegedly fouled the track near Parkman, Wyoming, without track authority by parking a grapple truck across it. After a January 30, 2013 investigatory hearing, BNSF terminated Frost on February 22, 2013. BNSF reinstated Frost with back pay on May 17, 2013, and removed the discipline related to the April 18, 2012 incident from his record.

On September 24, 2015, Frost filed suit against BNSF alleging it violated the employee protection provisions of the Federal Railroad Safety Act, 49 U.S.C.

§ 20109, by retaliating against him. (Doc. 1.) He claimed he engaged in protected activity by requesting to be taken to a medical facility following the near-miss, filing an injury report, requesting counseling, making reports regarding BNSF's safety violation, and filing a claim with OSHA. (Doc. 1 at ¶ 39.) Following a three-day trial, a jury found Frost did not prove by a preponderance of the evidence the elements necessary for his retaliation claim against BNSF. (Doc. 124.)

## LEGAL STANDARD

Following a jury trial, a court "may, on motion, grant a new trial on all or some of the issues . . . for any reason for which a new trial has heretofore been granted in an action at law in federal court." Fed. R. Civ. P. 59(a). Rule 59(a) does not provide a list of proper reasons for new trial, relying instead on historical practice. *Molski v. M.J. Cable, Inc.*, 481 F.3d 724, 729 (9th Cir. 2007). "Ultimately, the district court can grant a new trial under Rule 59 on any ground necessary to prevent a miscarriage of justice." *Experience Hendrix L.L.C. v. Hendrixlicensing.com Ltd*, 762 F.3d 829, 842 (9th Cir. 2014).

## ANALYSIS

### I. Jury Instruction

"[E]rroneous jury instructions . . . are bases for a new trial." *Murphy v. City*

*of Long Beach*, 914 F.2d 183, 187 (9th Cir. 1990). "'Jury instructions must be formulated so that they fairly and adequately cover the issues presented, correctly state the law, and are not misleading.'" *Gilbrook v. City of Westminster*, 177 F.3d 839, 860 (9th Cir. 1999) (quoting *Chuman v. Wright*, 76 F.3d 292, 294 (9th Cir. 1996)). "Whether an instruction misstates the law . . . is a legal issue reviewed *de novo*." *Galdamez v. Potter*, 415 F.3d 1015, 1021 (9th Cir. 2005). If a jury is erroneously instructed, prejudice is presumed "and the burden shifts to the [opposing party] to demonstrate 'that it is more probable than not that the jury would have reached the same verdict' had it been properly instructed" *Id.* at 1025 (quoting *Obrey v. Johnson*, 400 F.3d 691, 701 (9th Cir. 2005)).

### A. Erroneous Instruction

Frost argues that Instruction No. 20 was an incorrect statement of law and therefore warrants a new trial. (Doc. 139 at 6.) In its entirety, Instruction No. 20 states "BNSF cannot be held liable under the Federal Rail Safety Act if you conclude that defendant terminated plaintiff's employment based on its honestly held belief that plaintiff engaged in the conduct for which he was disciplined." (Doc. 121 at 26.) Frost argues this "honest belief" instruction is incompatible with the Federal Rail Safety Act. (Doc. 139 at 7.) BNSF disagrees, asserting that the instruction was appropriate because it correctly applies to the "contributing factor"

element Frost was required to meet in order to prove his claim. (Doc. 141 at 3.)

In pertinent part, the Federal Rail Safety Act makes it unlawful for a railroad to "discharge, demote, suspend, reprimand, or in any other way discriminate against an employee if such discrimination is due, in whole or in part," to the employee's engagement in certain protected activities. 49 U.S.C. § 20109(a). Burdens of proof under the Act are governed by 49 U.S.C. § 42121(b), part of the Wendell H. Ford Aviation Investment and Reform Act for the 21st Century, which lays out a two-step burden-shifting test. *Id.* at § 20109(d); *see also Araujo v. N.J. Transit Rail Operations, Inc.*, 708 F.3d 152, 157 (3d Cir. 2013). Under § 42121(b)(2)(B)(i)-(ii), an employee must first make a prima facie showing that (1) he engaged in protected activity in good faith; (2) the employer knew or perceived he engaged in that activity; (3) the employer subjected the plaintiff to an adverse employment action; and (4) the plaintiff's protected activity was a contributing factor to the adverse action. (*See also* Doc. 121 at 18, Instruction No. 12); *Araujo*, 708 F.3d at 157; *Tides v. Boeing Co.*, 644 F.3d 809, 813-14 (9th Cir. 2011) (discussing § 42121(b)(2)(B)(i) in the context of the Sarbanes-Oxley Act, which also incorporates § 42121(b)). A "contributing factor" is "any factor, which alone or in combination with other factors, tends to affect in any way the outcome of the decision." *Araujo*, 708 F.3d at 158; (Doc. 121 at 21,

Instruction No. 15). If the employee presents a prima facie case, the burden shifts to the employer to demonstrate "by clear and convincing evidence, that the employer would have taken the same unfavorable personnel action in the absence of [the protected activity]." 49 U.S.C. § 42121(b)(2)(B)(ii).

Frost argues that the "honest belief" instruction cannot apply to a Federal Rail Safety Act claim because the "honest belief" doctrine derives from *McDonnell-Douglas Corp. v. Green*, which laid out three-part burden shifting test under which (1) the plaintiff must show a prima facie case, (2) the defendant can rebut that case by articulating "some legitimate, nondiscriminatory reason for the employee's rejection," which (3) the plaintiff must then show to be pretextual in order to prevail. 411 U.S. 792, 802-04 (1973). Honest belief, per Frost, cannot apply in a Federal Rail Safety Act case because there is no "pretext element" in the two-part burden-shifting test of § 42121(b)(2)(B). (Doc. 139 at 13.) Its application here, Frost continues, impermissibly shifted the final burden of proof from BNSF (to show by clear and convincing evidence it would have taken the same action had Frost not engaged in protected activity) to Frost (to show BNSF's proffered reasons were merely pretextual). (*Id.* at 14.) In other words, BNSF's termination of Frost could simultaneously stem from both its honestly held belief that he engaged in the conduct for which he was disciplined (his violation of the

Maintenance of Way Rules) and its knowledge of his protected activity (thereby satisfying the "contributing factor" standard).

It is not clear that under such a reading that the "honest belief" instruction would mislead the jury by negating the "contributing factor" standard. Instruction 20 informed the jury it could not hold BNSF liable if it concluded BNSF terminated Frost's employment "based on its honestly held belief that Frost engaged in the conduct for which he was disciplined." (Doc. 121 at 26.) If the jury agreed, that is, if the jury found BNSF terminated Frost "based on its honestly held belief" that Frost broke the rules, its conclusion would reflect the inference that Frost's protected activity was not in fact a contributing factor to his dismissal.

Even assuming the "honest belief" instruction could be read as Frost argues, any latent ambiguity is resolved by reading that instruction in light of the instructions as a whole. First, the jury was instructed to "follow all" of the instructions, "and not single out some and ignore others," indicating it would have considered both honest belief and contributing factor. (Doc. 121 at 1, Instruction No. 1.) Second, the jury was instructed that a contributing factor "is anything which, alone or in connection with other matters, affected in any way any adverse employment decision by the BNSF concerning Frost," indicating the coexistence of an honest belief and a contributing factor would, at least at the prima facie

stage, still result in a liability finding. (*Id.* at 21, Instruction No. 15.) Finally, the jury was instructed that BNSF could avoid liability of it "prove[d] by clear and convincing evidence that it would have taken the same adverse employment actions in the absence of [Frost's] protected activity," supplying the correct burden of proof by which BNSF would have needed to show its honest belief had Frost proved his prima facie case. (*Id.* at 18, Instruction No. 12.) Taken as a whole, these instructions covered the issue as a whole and correctly stated the law. *Gilbrook*, 177 F.3d at 860 (quoting *Chuman*, 76 F.3d at 294). The "honest belief" instruction was not in error.

## B. Prejudice

Even if the "honest belief" instruction was in error, it did not substantially prejudice Frost because the jury found he did not meet the requirements of his initial prima facie case. A jury instruction is prejudicially erroneous and grounds for a new trial if "looking to the instructions as a whole, the substance of the applicable law was not fairly and correctly covered." *Miller v. Republic Nat. Life Ins. Co.*, 789 F.2d 1336, 1339 (9th Cir. 1989). "[B]oth inconsistent or equivocal instructions and incorrect statements of the law may be prejudicially erroneous." *Pollock v. Koehring Co.*, 540 F.2d 425 (9th Cir. 1976).

The instructions here were neither inconsistent nor equivocal, and fairly and

-8-

correctly covered the applicable law under the Federal Rail Safety Act. The first question on the verdict form asked whether Frost "prove[d] by a preponderance of the evidence the elements necessary for his retaliation claim as set forth in the instructions." (Doc. 124 at 1.) The jury found Frost had not. (*Id.*) Because Frost did not meet his prima facie burden of showing his "protected activity was a contributing factor to one or more of the adverse employment actions," (Doc. 121 at 18, Instruction No. 21), BNSF's honest belief was not implicated. *See also Galdamez*, 415 F.3d at 1021 (finding in the context of a Title VII action that "any error stemming from . . . [a] truncated version of [a] mixed motive instruction was more likely than not harmless" where the jury found the plaintiff had not shown "that her national origin was 'a motivating factor in any adverse employment action on the part of her supervisors'" while noting specifically the plaintiff had nevertheless been subjected to an adverse employment action). Thus, even assuming *arguendo* that the "honest belief" instruction was in error, Frost was not prejudiced by it.

## II. Newly Discovered Evidence

Frost further alleges BNSF withheld evidence of a "scorecard" policy, wherein BNSF's managers are individually rated based, in part, on injuries that occur under their direction. (Doc. 139 at 20.) Counsel for Frost states that, after

the conclusion of trial, a former BNSF employee informed counsel's firm of the scorecard summaries, and explained that "the scorecard is a metric used to evaluate manager performance . . . used, in part, to determine promotional opportunities, wage raises, and bonuses for BNSF managers." (Doc. 140 at 2-3.) Frost asserts that availability of this potential evidence at trial would probably have resulted in a different outcome "because the ratings provide [BNSF's] managers clear motive to retaliate against [Frost] for his injury report. " (Doc. 139 at 21.) Frost argues that the scorecard summaries would also have made BNSF's Incentive Compensation Plan relevant at trial, because it would show that BNSF has at least two policies tying employee injury frequency to manager compensation. (*Id.* at 23, n.9.)

A party seeking a new trial on the basis of newly discovered evidence must show that "(1) the evidence was discovered after trial, (2) the exercise of due diligence would not have resulted in the evidence being discovered at an earlier stage and (3) the newly discovered evidence is of such magnitude that production of it earlier would likely have changed the outcome of the case." *Defenders of Wildlife v. Bernal*, 204 F.3d 920, 929 (9th Cir. 2000). "Newly discovered evidence is evidence which pertains to facts in existence at the time of trial but which, by the exercise of reasonable diligence, was not discoverable prior to trial."

*Eigeman v. City of Great Falls*, 723 F. Supp. 522, 524 (D. Mont. 1989) (citing *Contempo Metal Furniture Co. of Cal. v. E. Texas Motor Freight Lines, Inc.*, 661 F.2d 761 (9th Cir. 1981)).

BNSF contests Frost's assertion that the scorecard summaries constitute newly discovered evidence, pointing out that Frost's counsel admits Frost was aware of the existence of the scorecards before trial began. (Doc. 141 at 23.) BNSF also notes that BNSF employee Eric Weber informed Frost's counsel during his deposition that BNSF measures injury frequency at the midlevel manager level (such as division engineer, superintendent, mechanical foreman, and general foreman). (Doc. 141-2 at 55.) Because Frost was made aware that BNSF tracked injury frequency by midlevel manager, BNSF argues, he cannot now claim the "scorecard" summaries are newly discovered. (Doc. 141 at 23.) Frost insists that the summaries are newly discovered because Frost believed the scorecard summaries only referred to "budgetary targets" and was unaware of the injury metric, and because Frost exercised due diligence by requesting in discovery that BNSF produce all policies related to employee compensation. (Doc. 139 at 21.)

On one hand, if Frost's BNSF source's assertion that the scorecard summaries are used in part to determine salary and promotions are true, Frost

-11-

makes a good case that BNSF wrongfully withheld the summary despite Frost's request for BNSF policies related to employee compensation. If, on the other hand, those assertions are inaccurate, the scorecard summaries would not appear to be relevant to Frost's request. And while BNSF asserts the summaries are not used to determine bonuses, it does not contradict Frost's assertion that they are used in part to determine compensation and promotion. Also unclear is whether Eric Weber's statements in his deposition that BNSF tracks injury frequency by midlevel manager should have put Frost on notice such that reasonable diligence would have led to his discovery of the scorecard summaries. BNSF may very well have hidden the ball.

That said, the scorecard summaries are not "of such magnitude" that their earlier production "would likely have changed the outcome of the case." *Defenders of Widlife*, 204 F.3d at 929. Frost's theory is that BNSF managers were motivated by BNSF's compensation structure, which rewarded managers whose employees reported fewer injuries, to retaliate against Frost for reporting an injury, and that the scorecard summaries are evidence of that motivation because they tie compensation to injury reporting. (Doc. 139 at 23.) However, as Mark Premrock, General Director of Compensation for BNSF states in his affidavit supporting BNSF's reply brief, the scorecard summaries are not linked to manager bonuses.

(Doc. 141-1 at ¶ 6.) Nor would the introduction of the scorecard summaries have made the Incentive Compensation Plan admissible, because the Plan is based on system-wide injury numbers and does not tie a manager's bonus to those injuries reported under his or her watch. (Doc. 141 at 21; Doc. 112 at 1-2.) While Frost's BNSF source states that the scorecard summaries are used to evaluate manager performance, which is in turn tied to promotions and raises, (Doc. 141 at 2), that connection is not so substantial as to warrant a new trial.

## III. Request to Strike

In its response brief, BNSF asks that the declaration of Frost's counsel Lucas Kaster in support of Frost's motion for new trial be stricken. (Doc. 141 at 19.) BNSF has not moved to strike, and the declaration is not "redundant, immaterial, impertinent, or scandalous." Fed. R. Civ. P. 12(f). The declaration will not be stricken.

## CONCLUSION

Because the "honest belief" instruction does not negate the "contributing factor" standard under the Federal Rail Safety Act, it is not an erroneous statement of the law. In addition, the jury instructions as a whole fairly and accurately cover the issues presented and are not misleading. And even if the "honest belief" instruction were erroneous, the jury's verdict shows it did not substantially

prejudice Frost. Finally, even if the "scorecard summaries" are newly discovered evidence, their earlier production would not likely have changed the outcome of this case.

Accordingly, IT IS ORDERED that the Motion for New Trial (Doc. 138) is DENIED. IT IS FURTHER ORDERED that the stay on enforcement of judgment (Doc. 147) is LIFTED.

DATED this 23rd day of May, 2017.

Donald W. Molloy, District Judge
United States District Court