**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| MICHAEL A. FROST, *Plaintiff-Appellant*, v. BNSF RAILWAY COMPANY, *Defendant-Appellee.* | No. 17-35513 D.C. No. 9:15-cv-00124-DWM OPINION |

Appeal from the United States District Court
for the District of Montana
Donald W. Molloy, Senior District Judge, Presiding

Argued and Submitted October 9, 2018
Seattle, Washington

Filed January 30, 2019

Before: Ferdinand F. Fernandez, N. Randy Smith,
and Morgan Christen, Circuit Judges.

Opinion by Judge Christen

2                        FROST V. BNSF

## SUMMARY[*]

### Labor Law

The panel reversed the district court's judgment, after a jury trial, in favor of the defendant in an action under the Federal Railroad Safety Act and remanded for a new trial.

Michael Frost alleged that BNSF Railway Co. violated the FRSA when it disciplined and ultimately terminated him after he committed a pair of safety rule violations and filed an injury report. At trial, the district court instructed the jury that BNSF could not be liable if it terminated Frost due to an "honest belief" that he violated the company's safety rules.

The panel held that the "honest belief" jury instruction was inconsistent with the FRSA's clear statutory mandate and prior caselaw. To establish a claim of unlawful discrimination under the FRSA, a plaintiff must prove by a preponderance of the evidence that his protected conduct was a contributing factor in an adverse employment action. The panel held that there is no separate requirement that the plaintiff prove that his employer acted with discriminatory intent. Rather, by proving that an employee's protected activity contributed in some way to the employer's adverse conduct, the FRSA plaintiff has proven that the employer acted with some level of retaliatory intent. The panel held that the "honest belief" jury instruction therefore misstated the applicable law, and BNSF did not rebut the presumption

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

Case: 17-35513, 01/30/2019, ID: 11172142, DktEntry: 55-1, Page 3 of 18
Case 9:15-cv-00124-DWM Document 159 Filed 01/30/19 Page 3 of 18

FROST V. BNSF 3

of prejudice. Accordingly, the panel reversed the district court's determination and remanded for a new trial.

**COUNSEL**

Lucas J. Kaster (argued) and James H. Kaster, Nichols Kaster LLP, Minneapolis, Minnesota, for Plaintiff-Appellant.

Bryan P. Neal (argued), Thompson & Knight LLP, Dallas, Texas; Keith M. Gorman, Hall & Evans LLC, Denver, Colorado; Paul S. Balanon, General Attorney, BNSF Railway Company, Fort Worth, Texas; for Defendant-Appellee.

**OPINION**

CHRISTEN, Circuit Judge:

Michael Frost sued the BNSF Railway Company, alleging that it violated the Federal Railroad Safety Act (FRSA) when it disciplined and ultimately terminated him after he committed a pair of safety rule violations and filed an injury report. At trial, the district court instructed the jury that BNSF could not be liable if it terminated Frost due to an "honest belief" that he violated the company's safety rules. The jury returned a verdict for BNSF. We review the propriety of the "honest belief" jury instruction. Because it is inconsistent with the FRSA's clear statutory mandate and our prior caselaw, we reverse and remand for a new trial.

4                     FROST V. BNSF

I.

BNSF is a large railway company that operates freight trains throughout the United States. Due to the many potential hazards associated with powerful locomotives operating near train and track workers, BNSF imposes a number of safety rules on its employees to minimize risks and prevent injuries. Among other things, those rules prohibit employees from approaching—or "fouling"—a track unless they have the proper authority and a work-related reason to be near the tracks.

BNSF hired Frost as a track laborer in June 2011. Within the first two years of his employment, Frost was disciplined twice for fouling the track. The first violation occurred on April 18, 2012. Frost was working with a crew that was repairing a section of track near Brimstone, Montana. The crew was removing and replacing a side track that ran adjacent to a main line. The crew members secured track authority—i.e., permission to be near the tracks because no trains would be running on the tracks—for both tracks at the start of their shift in order to move their equipment into position on the side track. The crew's foreman, George Schultz, released the crew's track authority for the main line once the equipment was in place on the side track, but he apparently failed to relay that information to Frost or the rest of the work crew.

During the course of the shift, Frost believed that the repair equipment was not being anchored properly so he moved toward the main line track to get a better view. At that point, a train traveling approximately 60 miles per hour passed by on the main line, narrowly missing Frost. The crew stopped working and Frost was taken to the hospital for

examination. On April 20, 2012, BNSF issued a notice of investigation to Frost and Schultz regarding the near-miss incident. Frost returned to work a few days later and filed an injury report describing his injury as "PTSD following a traumatic incident."

BNSF held a disciplinary hearing in July 2012. Frost argued at the hearing that he was being singled out because several of his fellow laborers (who had not filed injury reports) acknowledged that they were also near the track but they were not disciplined. Frost also claimed that inspecting the equipment's anchoring pattern was a legitimate job-related reason for approaching the main line. The hearing officer, Robert Rindy, rejected both arguments. Rindy reviewed video from the train which showed no other laborers near the main line track. He also concluded that Frost could have checked the anchoring pattern from other locations without approaching the main line track. Because Rindy determined that Frost fouled the track and committed a Level S (Serious) safety violation, Frost received a 30-day record suspension and was placed on a 36-month review period for that incident.[1] On October 9, 2012, Frost responded by filing an FRSA retaliation complaint with OSHA.

Frost's second track violation occurred on November 8, 2012, when he was working on a crew in Wyoming as a grapple truck driver. Frost arrived at the work site and parked his truck by a railroad crossing with the back end of the truck overhanging the track. Frost then entered a trailer where several other BNSF employees were located, and apparently said something like "I guess I better get the authority since

---

[1] Schultz, the crew foreman, was also disciplined for this incident.

...

6                          FROST V. BNSF

I'm already fouling the track." Because BNSF employees are required to know the precise details of their track authority before fouling a track, the other employees became concerned and a supervisor was called. The supervisor spoke with Frost and determined that he did not appear to have secured track authority before parking his truck. The supervisor removed Frost from service and reported the incident to Keith Samples, a division manager.

BNSF issued a notice of investigation and conducted a hearing regarding the second incident in January of 2013. Following the hearing, Samples found that Frost did not know the details of his track authority and that he had violated BNSF safety rules. Samples then concluded that Frost should be discharged due to the seriousness of the violation and the fact that it occurred so soon after the first disciplinary incident. It is undisputed that Frost would not have been discharged if the first incident had not occurred.

Frost requested reinstatement. After an internal review, BNSF decided to reinstate Frost, due to a concern that BNSF would not be able to justify the discipline imposed for the April 2012 incident if Frost challenged his dismissal before an arbitrator. Frost was reinstated, with back pay, and BNSF removed the April 2012 disciplinary incident from his record.

Nevertheless, Frost filed suit in September of 2015 alleging retaliation under the FRSA for Frost's engagement in protected activities—i.e., for reporting the PTSD injury following the first incident and for filing an OSHA complaint alleging disciplinary retaliation shortly thereafter. Frost's complaint alleged that these protected activities were contributing factors to BNSF's decision to terminate him, and

FROST V. BNSF 7

he sought an award of emotional distress damages, punitive damages, and attorney's fees.

The matter was tried to a jury over four days. At trial, Rindy testified that he disciplined Frost because such discipline was required by BNSF's employee performance accountability policy, and not because Frost had filed an injury report or engaged in any other protected activities. And Samples testified that when he decided in 2013 that Frost should be discharged, he was not aware that Frost had filed an OSHA complaint concerning the first incident. At the close of the evidence, the trial court instructed the jury, over Frost's objection, that:

> BNSF cannot be held liable under the Federal Railroad Safety Act if you conclude that defendant terminated plaintiff's employment based on its honestly held belief that plaintiff engaged in the conduct for which he was disciplined.

The jury returned a verdict in favor of BNSF.

Frost moved for a new trial, arguing that the honest belief jury instruction was erroneous and that it substantially prejudiced him. He also argued the he deserved a new trial because BNSF improperly withheld evidence regarding a potential retaliatory motive for terminating him—a "scorecard" policy that rated each manager, in part, on the number of injuries that occurred on his or her watch. The trial court acknowledged that BNSF appeared to "have hidden the ball" by not producing the scorecard policy in discovery, but it found no prejudice. The district court was also

8   FROST V. BNSF

unpersuaded by Frost's challenge to the honest belief instruction. Frost appealed.**²**

II.

We review de novo whether a jury instruction properly states the elements that must be proved at trial. *Chuman v. Wright*, 76 F.3d 292, 294 (9th Cir. 1996). An instruction is erroneous when, viewing the instructions as a whole, the "substance of the applicable law was [not] fairly and correctly covered." *Miller v. Republic Nat'l Life Ins. Co*., 789 F.2d 1336, 1339 (9th Cir. 1986) (alteration in original and citation omitted). If there is an error, we presume that the error was prejudicial and the non-moving party bears the burden of establishing that "it is more probable than not" that a properly instructed jury "would have reached the same verdict." *Galdamez v. Potter*, 415 F.3d 1015, 1025 (9th Cir. 2005) (quoting *Obrey v. Johnson*, 400 F.3d 691, 701 (9th Cir. 2005)) (internal quotation marks omitted).

III.

We first examine the appropriate standards governing a claim of unlawful discrimination under the FRSA. As we recently explained in *Rookaird v. BNSF Railway Co.*, 908 F.3d 451 (9th Cir. 2018), the FRSA expressly invokes the

---

**²** Because we reverse the district court's denial of Frost's request for a new trial on the basis of the erroneous honest belief jury instruction, we do not address Frost's claim that he is also entitled to a new trial because BNSF withheld relevant and material documents in discovery.

FROST V. BNSF 9

AIR-21[3] framework set forth in 49 U.S.C. § 42121(b) for claims of unlawful discrimination. *Id.* at 459.[4]

To establish a claim of unlawful discrimination under the FRSA, the plaintiff must prove by a preponderance of the evidence that his or her protected conduct "was a contributing factor in the unfavorable personnel action alleged in the complaint." *Id.* at 460 (citing 49 U.S.C. § 42121(b)(2)(B)(iii)). A contributing factor is "any factor, which alone or in connection with other factors, tends to affect in any way the outcome of the decision." *Rookaird*, 908 F.3d at 461 (internal quotation marks omitted). If the plaintiff succeeds, the employer can attempt to rebut the allegations and defeat the claim by demonstrating "by clear and convincing evidence that the employer would have taken the same unfavorable personnel action in the absence of [the protected activity]." 49 U.S.C. § 42121(b)(2)(B)(iv).

Importantly, the only burden the statute places on FRSA plaintiffs is to ultimately prove, by a preponderance of the evidence, that their protected conduct was a contributing factor to the adverse employment action—i.e., that it

---

[3] "AIR-21" refers to the Wendell H. Ford Aviation Investment and Reform Act for the 21st Century, Pub. L. No. 106-181, 114 Stat. 61 (2000), which includes protections for whistleblowers and prohibits discrimination against an air carrier employee who reports information related to air carrier safety. Congress expressly adopted the same standard for the FRSA. 49 U.S.C. § 20109(d)(2).

[4] We are aware that under this framework there are two stages, a prima facie stage and a substantive stage. We are here concerned primarily with the substantive stage, as this appeal causes us to consider only whether the honest belief instruction altered the substance of what needed to be proven at trial.

"tend[ed] to affect" the decision in some way. *Id*. § 42121(b)(2)(B); *Rookaird*, 908 F.3d at 461.

BNSF argues that the FRSA is a "discrimination statute" and that plaintiffs must therefore affirmatively prove that their employers acted with discriminatory intent or animus in order to bring claims for unlawful retaliation. We recognize that the FRSA, by its terms, describes and forbids intentional retaliation, 49 U.S.C. § 20109(a), meaning that employers must act with impermissible intent or animus to violate the statute. What BNSF misses is that the only proof of discriminatory intent that a plaintiff is required to show is that his or her protected activity was a "contributing factor" in the resulting adverse employment action. Showing that an employer acted *in retaliation for* protected activity *is* the required showing of intentional discrimination; there is no requirement that FRSA plaintiffs separately prove discriminatory intent. 49 U.S.C. § 42121(b)(2)(B). Indeed, in *Tamosaitis v. URS Inc.*, 781 F.3d 468 (9th Cir. 2015), we reviewed claims under the Energy Reorganization Act's whistleblower retaliation protections that employ the same statutory framework as the FRSA. *Id*. at 480. We explained: "Under this framework, the presence of an employer's subjective retaliatory animus is irrelevant. All a plaintiff must show is that his 'protected activity was a contributing factor in the adverse [employment] action.'" *Id*. at 482 (alterations in original) (quoting 29 C.F.R. § 24.104(f)(1)). *Coppinger-Martin v. Solis*, 627 F.3d 745 (9th Cir. 2010) also involved a retaliation claim arising in the context of a statute with the same "contributing factor" framework. There, we explained that to meet her burden *at the prima facie stage* a plaintiff need not "*conclusively* demonstrate the employer's retaliatory motive." *Id*. at 750 (emphasis added). Rather, the employer's retaliatory motive was established by proving that

FROST V. BNSF 11

the protected conduct was a contributing factor to the employer's adverse action.

More recently, in *Rookaird*, we quoted the Eighth Circuit's decision in *Kuduk v. BNSF Railway Co.*, 768 F.3d 786 (8th Cir. 2014), and said that "'the contributing factor that an employee must prove is intentional retaliation prompted by the employee engaging in protected activity.'" *Rookaird*, 908 F.3d at 461–62 (quoting *Kuduk*, 768 F.3d at 791) (alteration omitted). BNSF cites this language from the *Kuduk* decision to argue that the FRSA requires proof of discriminatory animus, separate from and beyond the statutorily required evidence that the plaintiff's protected conduct was a contributing factor in the adverse employment action. But as *Tamosaitis* and *Coppinger-Martin* have shown, we have already rejected that premise as inconsistent with the FRSA's articulation of each party's required evidentiary burden. In fact, in *Kuduk*, the Eighth Circuit relied on our *Coppinger-Martin* decision and acknowledged that plaintiff need not provide "conclusive[]" proof of the employer's animus to establish the plaintiff's prima facie case. *See Kuduk*, 768 F.3d at 791. *Rookaird*'s citation to *Kuduk* does not imply, much less impose, an obligation to prove retaliatory intent that is not included within the FRSA's clear and explicit statutory scheme. Instead, *Rookaird* simply confirms that although intent or animus is part of an FRSA plaintiff's case, showing that plaintiff's protected conduct was a contributing factor is the required showing of intent or "intentional retaliation[.]" *Id*. That is, by proving that an employee's protected activity contributed in some way to the employer's adverse conduct, the FRSA plaintiff has proven that the employer acted with some level of retaliatory intent.

12          FROST V. BNSF

Consistent with the language of 49 U.S.C. § 42121(b)(2)(B) and our prior decisions in *Tamosaitis*, *Coppinger-Martin*, and *Rookaird*, we hold that although the FRSA's prohibition on "discriminat[ing] against an employee" ultimately requires a showing of the employer's discriminatory or retaliatory intent, FRSA plaintiffs satisfy that burden by proving that their protected activity was a contributing factor to the adverse employment decision.[5] There is no requirement, at either the prima facie stage or the substantive stage, that a plaintiff make any additional showing of discriminatory intent.

IV.

A.

Frost argues that the district court's honest belief jury instruction misstated the applicable law. We agree.

The district court instructed the jury that:

> BNSF cannot be held liable under the Federal Railroad Safety Act if you conclude that defendant terminated plaintiff's employment based on its honestly held belief that plaintiff engaged in the conduct for which he was disciplined.

---

[5] This holding is consistent with recent authority from the Third Circuit, *see Araujo v. N.J. Transit Rail Operations, Inc.*, 708 F.3d 152, 158 (3d Cir. 2013), but we recognize that it may conflict with authority from the Seventh and Eighth Circuits. However, we are bound by our prior caselaw as well as the explicit statutory language of 49 U.S.C. §§ 20109(d) and 42121(b)(2)(B).

FROST V. BNSF 13

That instruction is not consistent with the FRSA's statutory scheme. Frost needed to prove only that his protected conduct (filing an injury report and an OSHA complaint) was a contributing factor to his ultimate termination. To rebut Frost's case, BNSF had to prove that the same discipline would have been imposed with or without the injury report or the OSHA complaint. *See* 49 U.S.C. § 42121(b)(2)(B); *Rookaird*, 908 F.3d at 460. This necessarily means it was possible for Frost to show retaliation even if BNSF had an honestly-held, justified belief that he fouled the track. Frost was not required to show that his injury report was the *only* reason or that no other factors influenced BNSF's decision to terminate him. Nor does the instruction's use of "based on" foreclose the possibility that an impermissible factor or consideration contributed to the decision to discipline Frost. As *Rookaird* explained, "contributing factors" may be quite modest—they include "any factor" which "tends to affect in any way the outcome of the decision." *Id*. at 461 (internal quotation marks omitted). Under the AIR-21 standard, Frost would be entitled to relief even if his filing of an injury report played only a very small role in BNSF's decision-making process.

Instructing the jurors that they could find for BNSF by looking only at whether BNSF honestly believed that Frost broke a rule risked denying Frost a remedy to which he may be entitled under the statute, particularly because the evidence here appears to show relatively clearly that Frost fouled the track. The instruction may have encouraged the jury to skirt the actual issue and improperly focus on whether discipline was justified for Frost's safety violation instead of whether his protected conduct "tend[ed] to affect in any way" the decision to terminate him. *Id.* (internal quotation marks omitted). The instruction may have short-circuited the jury's

deliberation by offering a path to finding for BNSF without requiring that it assess all of the relevant statutory burdens.

BNSF argues that honest belief instructions have been approved in FRSA cases, citing *Armstrong v. BNSF Railway Co.*, 880 F.3d 377 (7th Cir. 2018). In *Armstrong*, the jury was instructed that:

> Defendant cannot be held liable under the FRSA if you conclude that Defendant terminated Plaintiff's employment based on its honestly held belief that Plaintiff *did not engage in protected activity* under the FRSA in good faith.

*Id*. at 381 (emphasis added).

*Armstrong* does not help BNSF because the primary dispute in that case was about whether the plaintiff had actually engaged in protected conduct in the first place, not whether the protected conduct was a contributing factor to the plaintiff's discipline. *Id*. at 382. Because there was evidence in *Armstrong* that the employer may have honestly believed that the employee did not engage in protected activity, *Armstrong*'s honest belief instruction was not improper. That said, the only conclusion to be drawn from *Armstrong* is the recognition that it would not be possible to show that an employer retaliated in response to an employee engaging in protected activity if the employer could demonstrate that it honestly believed no protected activity had occurred.[6]

---

[6] Even under the circumstances in *Armstrong*, we note that the Seventh Circuit only tepidly approved the instruction as not the "clearest possible statement of the applicable law[.]"  880 F.3d at 382.

FROST V. BNSF 15

Because there was no dispute that Frost engaged in protected conduct, *Armstrong* is distinguishable and the district court's use of the honest belief instruction was therefore legally erroneous.

B.

We next determine whether the erroneous honest belief instruction warrants a new trial.

Frost provided evidence that other BNSF employees fouled the track during the April 2012 incident, but that they did not file injury reports and were not disciplined. The jurors could construe this evidence of unpunished track-foulers as proof of disparate treatment and retaliatory conduct—i.e., that Frost's injury report was a contributory factor to his termination. However, the jurors also may have found that evidence not very credible or they may have instead believed the testimony of BNSF's witnesses that Frost's injury report played no part in the decision to discipline him. Though a properly instructed jury may have reached a verdict for BNSF, we must presume prejudice where an erroneous jury instruction is given. *See Galdamez*, 415 F.3d at 1025. The burden at this stage is thus on BNSF to show it is more probable than not that the jury would have reached the same verdict without the honest belief instruction. *Id*. BNSF does not satisfy that burden.

BNSF's counsel acknowledged during its argument before our court that we simply do not know exactly how the jury evaluated the evidence in this case. The verdict form was relatively sparse, asking only two questions: (1) whether Frost had met his prima facie case of showing his protected activity was a contributing factor; and (2) whether BNSF

16 FROST V. BNSF

successfully rebutted Frost's case by showing that it would have imposed the same disciplinary action with or without the protected conduct. The jury answered "no" to the first question and did not answer the second.

Because we do not know how the jurors applied the honest belief instruction, we cannot find that the presumption of prejudice is rebutted. BNSF presented strong evidence (video from the train) that Frost fouled the track. The jurors therefore may have felt it unnecessary to unravel any potential factual tensions—e.g., the dispute between Frost's and BNSF's witnesses about whether other laborers were fouling the track at the same time Frost was—or they might have discounted questions about whether Frost's injury report played any role (even if only a small one) in BNSF's decision to discipline Frost. We also do not know whether the jurors concluded that Frost would have been terminated whether or not he filed an injury report because they did not reach that question on the verdict form. We are therefore bound to presume the improper instruction was prejudicial. *See Galdamez*, 415 F.3d at 1025.

We also cannot conclude that the presence of other, accurate instructions eliminated the possibility that prejudice resulted from the honest belief instruction, although we presume that juries listen to and follow instructions, and we have previously found an erroneous jury instruction to be harmless where the instructions as a whole were accurate. *See, e.g.*, *Sanderson v. Chapman*, 487 F.2d 264, 267 (9th Cir. 1973). There is relatively clear evidence that Frost committed two safety violations, and the honest belief instruction given here effectively allowed the jury to find for BNSF on that basis alone. Because the erroneous instruction provided a shortcut that the jury may well have taken, the jury

FROST V. BNSF                                              17

may not have decided whether Frost's injury report was a factor that contributed to his termination or whether BNSF would have terminated him even if he had not reported an injury. Accordingly, the other jury instructions in this case do not rebut the presumption of prejudice.

BNSF suggested during argument before our court that lay jury members would have understood the instruction's use of "based on" to mean "*solely* or *exclusively* based on," so the jury must have concluded that Frost's injury report was not a factor (contributory or otherwise) to his termination. In our view, that is not an obvious or intuitive conclusion. It is just as likely that a lay juror would conclude that if a certain factor was the primary cause of a given consequence, the consequence was "based on" that factor, regardless of whatever other causative factors were shown at trial. More importantly, the record in this case does not permit much of an inference either way, and in the absence of more precise language these (and perhaps other) interpretations of this instruction were left available to the jury. BNSF's speculation about how the jury might have applied the erroneous honest belief instruction therefore cannot rebut the presumption of prejudice or effectively show it is more probable than not that jurors would have reached the same verdict with or without the honest belief instruction. *Galdamez*, 415 F.3d at 1025.

V.

The honest belief instruction was legally erroneous and BNSF has failed to rebut the presumption that the improper

| 18 | FROST V. BNSF |
|---|---|

instruction prejudiced Frost. Accordingly, we reverse the district court's determination and remand for a new trial.

**REVERSED AND REMANDED**.